## B.E.S. ENVIRONMENTAL SPECIALISTS, INC., Plaintiff,

v.

## The UNITED STATES, Defendant.

### No. 90–25C.

United States Claims Court.

Aug. 23, 1991.

Ruth E. Ganister, West Chester, Pa., for plaintiff.

Lisa B. Donis and Steven A. Hemmat, Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for defendant; Thomas J. Doherty and John E. Jensen, Office of Gen. Counsel, E.P.A., of counsel.

## OPINION

MARGOLIS, Judge.

This government contracts case comes before the court on defendant's motion to dismiss or, in the alternative, for summary judgment and on plaintiff's cross-motion for summary judgment. The plaintiff contracted with the defendant for the removal of hazardous substances under a federal environmental program. Subsequently, plaintiff and Richard Baranowski, plaintiff's President, were indicted on criminal charges of alleged wrongdoing relating to the contract. Plaintiff and Baranowski were acquitted of all charges.

Before this court, plaintiff claims that expenses, including legal and professional fees, incurred in defending against the criminal charges are a direct cost arising out of the contract which should be reimbursed by defendant. Defendant argues that this court is without jurisdiction because plaintiff failed to submit a properly certified claim to the contracting officer and that plaintiff is not entitled to reimbursement for legal and professional expenses incurred in connection with defending against the indictments. After careful consideration and after hearing oral argument, this court grants the defendant's motion for summary judgment on the ground that this court does not have jurisdiction.

## FACTS

The United States Environmental Protection Agency ("EPA") and the B.E.S. Envi-

ronmental Specialists, Inc. ("BES") entered into a letter contract on October 27, 1983, EPA Contract No. 68–93–0048, under which BES agreed to provide EPA with emergency hazardous waste cleanup services. A letter contract was utilized in order to allow emergency response to commence immediately at a hazardous waste site, Brown's Battery Breaking site in Tilden Township, Pennsylvania. The letter contract was to be definitized at a later date, and eventually was definitized on April 25, 1984.

On April 14, 1987, after an investigation by the EPA Office of Inspector General, BES and its President, Richard Baranowski were indicted for fraud. *United States v. BES Environmental Specialists, Inc., and Richard Baranowski*, 87–00163–01,02, U.S. District Court, Eastern District of Pennsylvania. BES incurred attorneys fees and related costs in defending against the criminal charges on which it was acquitted. On November 9, 1988, BES submitted a request for payment to the contracting officer for $236,858 for the "additional cost incurred in defense of action brought by the U.S. Government under contract No. 68–93–0048." The November 9, 1988 request for payment was certified by Martha Baranowski, then President of BES, and requested reimbursement pursuant to the contract disputes clause, the equitable adjustment clause, and the contract changes clause.

On November 22, 1988, contracting officer Constance Hart acknowledged receipt of BES's "claim" for costs incurred in defending the criminal charges and stated that a decision would be reached within sixty days pursuant to the Federal Acquisition Regulations ("FAR") § 33.211. Documentation of the amount of legal fees expended was provided by letter of November 25, 1988 in response to a request by contracting officer Hart.

On December 30, 1988, EPA contracting officer Carolyn M. Anderson wrote to BES stating that BES had not submitted a claim because the letter of November 9, 1988 was only a normal request for payment in the ordinary course of business, not a "claim" under the Contract Disputes Act.

On February 27, 1989, a third contracting officer, Timothy S. Grier, denied BES' request for payment of legal fees. Grier stated that the legal fees were not compensable under either the contract's fixed rate schedule or its cost reimbursement provisions, that reimbursement could not be considered as an equitable adjustment since the criminal proceedings were not authorized under the contract's "changes" clause, and that increasing the fixed rates was inappropriate since the criminal defense costs had no effect on those rates.

On July 6, 1989, BES sent a letter to contracting officer Grier stating that the request for payment was submitted pursuant to the Contract Disputes Act and asking that his office issue a final decision on the request. No response to this letter was received by BES.

On January 8, 1990, BES filed this suit in the United States Claims Court seeking judgment against the United States acting through the EPA for $236,858, plus interest.

## DISCUSSION

Contracts which executive agencies enter into for the procurement of services are subject to the Contract Disputes Act ("CDA"). 41 U.S.C. § 602(a)(2) (1988). The CDA requires requests for payment made by government contractors in excess of $50,000 to be certified and submitted in written form to the contracting officer along with a request for a final decision. *Id.* § 605; *see W.M. Schlosser Co. v. United States*, 705 F.2d 1336, 1338 (Fed.Cir. 1983). The contractor shall certify that the claim is made in good faith, that the supporting data are accurate and complete to the best of his knowledge and belief, and that the amount requested accurately reflects the contract adjustment for which the contractor believes the government is liable. *United States v. Grumman Aerospace Corp.*, 927 F.2d 575, 578 (Fed.Cir. 1991). The objective of Congress in requiring certification is to trigger a contractor's potential liability for a fraudulent claim

under § 604 of the Act. *Skelly & Loy v. United States*, 231 Ct.Cl. 370, 376, 685 F.2d 414, 418 (1982).

The CDA, although speaking in terms of claims, does not define what constitutes a claim. This definition is important because the jurisdiction of the United States Claims Court is limited and can be invoked only when a *claim* that is "founded ... upon any express or implied contract with the United States" is concerned. 28 U.S.C. § 1491 (1988). If the request for payment made by BES was not properly a claim when submitted, and no subsequent proper claim was made prior to initiation of this lawsuit, the case must be dismissed by this court for lack of jurisdiction.

The Federal Acquisition Regulations provide a definition of claim which elucidates the usage of the word in the CDA. The FAR defines a claim as:

> a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, ... A voucher, invoice, or other routine request for payment that is not in dispute when submitted is not a claim.

48 C.F.R. § 33.201 (1990). In a recent case construing a contract disputes clause, the CDA, and the Defense Acquisition Regulations (DAR) requirements for a claim, which contains the same language as the FAR provision in our case, the United States Court of Appeals for the Federal Circuit held that the DAR "language is not ambiguous, and means what it says: A contractor and the government contracting agency must already be *in dispute* over the amount requested." *Dawco Construction, Inc. v. United States*, 930 F.2d 872, 878 (Fed.Cir.1991) (emphasis in original). When a submission becomes disputed, it may be converted to a claim by written notice to the contracting officer pursuant to FAR § 33.206(a). A submission does not become a claim "merely by the reagent of dispute. A separate document constituting a claim must be submitted for resolution." *Essex Electro Engineers, Inc. v. United States*, 22 Cl.Ct. 757, 765 (1991).

The jurisdictional issue is multi-tiered. At bottom, for this court to have jurisdiction, BES must have submitted a properly certified claim to the contracting officer under the Contract Disputes Act before BES filed suit on January 8, 1990.

The first question is whether a dispute existed when BES's November 9, 1988 letter was submitted, requesting for the first time that the government pay legal fees. This request was properly certified. The government had given no indication before this letter was sent that the demand would be contested. Even "correspondence suggesting disagreement during negotiations, while [it] may ultimately lead to a dispute, do[es] not, for purposes of the [CDA], satisfy the clear requirement that the request be in dispute." *Dawco*, 930 F.2d at 878 (citing *Mayfair Construction Co. v. United States*, 841 F.2d 1576, 1577 (Fed.Cir.), *cert. denied*, 488 U.S. 980, 109 S.Ct. 528, 102 L.Ed.2d 560 (1988)). Thus there is a strong requirement that a request for payment be tangibly disputed. The fact that even correspondence suggesting disagreement would not satisfy this requirement, and the government's lack of knowledge in this case that the request would be made (and therefore could not contest it), this court finds that the dispute requirement was not satisfied as of November 9, 1988.

The second question is when and if a dispute did arise between the parties. The February 27, 1989 letter from contracting officer Timothy Grier specifically denied BES's request for payment. At this point, a *bona fide* dispute between the parties existed, satisfying the *Dawco* requirement.

The third question is whether a viable claim was made after the dispute arose on February 27, 1989. BES submitted a letter to the EPA on July 6, 1989 asserting that its November 9, 1988 letter was a claim and requesting a final decision by the contracting officer. The July 6, 1989 letter was not certified. However, the CDA provides that:

> [t]he contractor shall certify that the claim is made in good faith, that the supporting data are accurate and complete to the best of his knowledge and

belief, and that the amount requested accurately reflects the contract adjustment for which the contractor believes the government is liable.

41 U.S.C. § 605(c)(1). The certification requirement applies to claims in excess of $50,000. *Id.* The plaintiff's complaint in our case requests an amount in excess of this figure. Absent certification, which would trigger a contractor's potential liability for a fraudulent claim, a request in excess of $50,000, though disputed, will not be deemed a properly certified claim. Thus, the July 6, 1989 letter does not constitute a properly certified claim pursuant to the CDA.

## CONCLUSION

Neither the November 9, 1988 nor July 6, 1989 letters submitted by BES to the EPA qualify as properly certified claims under the Contract Disputes Act. This court is therefore without jurisdiction to consider the merits of this case. Accordingly, the defendant's motion for summary judgment is granted, and the plaintiff's motion for summary judgment is denied. The Clerk is directed to dismiss the complaint without prejudice. Each party will bear its own costs.