# ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeal of -- )
)
Areyana Group of Construction Company ) ASBCA No. 60648
)
Under Contract No. W5J9LE-12-C-0013 )

APPEARANCE FOR THE APPELLANT: Mr. Zabit Khan
President

APPEARANCES FOR THE GOVERNMENT: Michael P. Goodman, Esq.
Engineer Chief Trial Attorney
James D. Stephens, Esq.
Edward J. McNaughton, Esq.
Engineer Trial Attorneys
U.S. Army Engineer District, Memphis

## OPINION BY ADMINISTRATIVE JUDGE PAUL
## ON THE GOVERNMENT'S MOTION TO DISMISS

This is a timely appeal of a contracting officer's (CO's) final decision denying appellant Areyana Group of Construction Company's (AGCC's) request for a 188-day time extension and the return of liquidated damages withheld by the government in a total amount of $380,512. The Contract Disputes Act (CDA), 41 U.S.C. §§ 7101-7109, is applicable. The government filed a motion to dismiss, contending that AGCC failed to certify its request and that, accordingly, the Board lacked jurisdiction to review its allegations.[1]

## STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

1. On 28 December 2011, the government entered into fixed-price contract, No. W5J9LE-12-C-0013, with AGCC in a total amount of $13,058,609.03 (R4, tab 3 at 1-2). Under the contract, AGCC was required to design and construct "the Open Bay Barracks for the Afghan National Civil Orders Police (ANCOP) Patrol Battalion at Tarim Kwot, Uruzgan Province, Afghanistan" (*id.* at 5).

2. The contract incorporated by reference several Federal Acquisition Regulation (FAR) clauses, including FAR 52.233-1, DISPUTES (JUL 2002) (R4, tab 3 at 11), which included in pertinent part:

---

[1]  This decision pertains only to ASBCA No. 60648, which is consolidated with ASBCA No. 60649.

(c) *Claim*, as used in this clause, means a written demand or written assertion by one of the contracting parties seeking, as a matter by right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to this contract. However, a written demand or written assertion by the Contractor seeking the payment of money exceeding $100,000 is not a claim under the [CDA] until certified.

The contract also contained FAR 52.211-12, LIQUIDATED DAMAGES—CONSTRUCTION (SEP 2000), which provided for damages in the amount of $2,024 for each day of delay in completing the work. In addition, the contract included FAR 52.211-10, COMMENCEMENT, PROSECUTION, AND COMPLETION OF WORK (APR 1984), which stated:

The Contractor shall be required to (a) commence work under this contract within 10 calendar days after the date the Contractor receives the notice to proceed, (b) prosecute the work diligently, and (c) complete the entire work ready for use not later than **460 calendar days** from notice to proceed. The time stated for completion shall include final cleanup of the premises.

(*Id.* at 33)[2]

3. On 4 December 2012, the contracting officer's representative (COR) informed AGCC that she was withholding 5 percent of progress payment No. 7 due to unsatisfactory performance (R4, tab 12). On 12 December 2012, the CO informed AGCC that, although it should have achieved completion of 52 percent, it had only made progress in the amount of 30 percent. He asked AGCC to provide a remediation plan. (R4, tab 13 at 1) As of 2 January 2013, AGCC had not produced the requested plan. On that date, the COR informed AGCC that it was over 10 percent behind schedule and that accordingly, 10 percent of progress payment No. 8 was being withheld. (R4, tab 14 at 1)

4. On 8 January 2013, the COR informed AGCC that it was "over 20% behind schedule." On this basis, she wrote that she was preparing "an interim unsatisfactory evaluation" with respect to AGCC's work on the contract. (R4, tab 15 at 1) On 4 February 2013, the COR informed AGCC that it was withholding 10 percent of progress payment No. 9 for unsatisfactory performance (R4, tab 17). On 17 April 2013,

---

[2] On 28 January 2012, the CO advised AGCC that the notice to proceed date would be 18 February 2012 and that it had 460-calendar days from that date to complete the project (R4, tab 7 at 1-2). Thus, the contract completion date was 23 May 2013 (R4, tab 13 at 1).

2

the COR reminded AGCC that the contractual completion date was 23 May 2013 and that the project was only 63 percent complete. She sought a completion plan from AGCC and noted that liquidated damages would be assessed for "each calendar day of delay." (R4, tab 19 at 1)

5. AGCC did not complete the project in a timely manner. On 24 August 2013, it cited security problems and bad weather as part of a request for equitable adjustment (REA). Through its request, AGCC sought a "no-cost time extension of...120 calendar days." (R4, tab 20 at 1-5) On 6 September 2013, the CO returned the REA "without action as it does not comply with the requirement of your contract" (R4, tab 22 at 1).

6. On 11 November 2013, AGCC forwarded another REA to the CO in which it sought a "no-cost time extension of...176 calendar days due to delay." It once again referred to "the security situation," as well as "bad weather." (R4, tab 23 at 1-5)

7. On 25 November 2013, the CO forwarded the following response to AGCC's second REA:

> Reference is made to your Serial Letter H-0008... subject as above. The following information is provided concerning your REA. After a thorough review, the Government notes that REA H-0008 submission is identical to your previous submission, H-0006.... The only difference between AGCC's REA H-0006 and H-0008 is that your first submission included delay related to Pre-Engineering Building (PEB) Subcontractor under section "C" of H-0006 which has now been omitted from H-0008. In fact, all other narratives in both letters are identical. Essentially, AGCC has submitted the same exact REA without any changes besides the exception noted. Your justification for time extension to the Contract Completion Date remains unchanged; same justification that was rejected and found to be "non-compliant" with the Contract requirements per Government SL C-0014....
>
> You are hereby advised once again that your REA is returned without action as it does not comply with the requirements of your Contract as well as making an equitable adjustment request that is specifically excluded by the contract. As submitted, neither of your REAs can be reviewed for merit and furthermore, AGCC's reasoning and justification of merit for additional time is without basis. You are strongly urged to review the Contract requirements

3

specifically identified in SL C-0014 and comply with those requirements accordingly. No further action will be taken by the Government concerning this matter pending receipt of an REA that is compliant with the requirements of your signed Contract.

Should you have further questions, concerns or need additional clarification on this matter, please do not hesitate to contact the PE/COR or the undersigned. Your acknowledgement of this notice shall be provided to the Government within twenty-four (24) hours of receipt.

(R4, tab 24 at 1)

8. On 4 December 2013, the COR wrote to inform AGCC of the following:

As a result of the prefinal inspection conducted on 27 November 2013 it has been determined that your construction progress is sufficiently complete to allow the Government use and possession of the facility effective 27 December 2013. In accordance with Clause 52.246-21, titled "Warranty of Construction," your warranty coverage shall commence from this date and continue for a period of one year. This clause stipulates the terms for and administration of the warranty and also provides that the work performed under this contract be guaranteed to conform to the contract requirements and be free of defects in equipment, materials, design-furnished and workmanship.

Deficiencies and/or incomplete work found during the prefinal inspection, as well as the outstanding administrative actions required on your part, are identified on the attached list. This office shall be advised, in writing, the date that each item listed will be completed and/or corrected. Please provide this schedule to me no later than 5 December 2013. Final acceptance for this contract will be made when all work is completed and all deficiencies corrected.

(R4, tab 25 at 1)

Through correspondence dated 4 December 2013, the COR notified AGCC that "all work associated with the above contract is physically complete and all issues have been resolved" (R4, tab 16 at 1).

4

9. On 20 April 2014, AGCC filed "the latest iteration of" its REA in which it requested "a time extension of 131 calendar days as a result of shipment delays caused by security issues." The CO found no merit in AGCC's request in a decision issued on 8 September 2014, and, accordingly, denied it in its entirety. (R4, tab 31 at 1-4)

10. On 10 May 2015, AGCC submitted a voluminous package in support of its REA in which is sought a "no-cost time extension" for 188 days (R4, tab 32, *passim*). In a letter dated 7 June 2015, the CO, once again, denied AGCC's delay claim. He concluded by stating: "This will be the Government's final response regarding the referenced Request for Equitable Adjustment." (R4, tab 33 at 1-2)

11. On 3 October 2015, AGCC filed a self-styled "claim" for a no-cost time extension of 188 days and the return of liquidated damages in a total amount of $380,512 (R4, tab 34 at 5). The "claim" package largely replicated AGCC's final iteration of its REA (*id., passim*). Although the amount in dispute exceeded $100,000, AGCC did not submit a certification. In addition, the "claim" did not contain a request for a CO's final decision. (*Id.*)

12. In a letter, dated 17 March 2016, the CO, once again denied AGCC's request for a 188-day, no-cost time extension and the release of previously withheld liquidated damages in a total amount of $380,512. She also wrote:

> Finally, the letter identified as Claim Letter-O1 stated to be a claim as per Federal Acquisition Regulation Section Subpart 33.2-Disputes and Appeals. We are unable to treat this as a claim as AGCC failed to properly certify the document. AGCC requested the return of liquidated damages in the amount of $380,512.00. Any claim for more than $100,000.00 is required to be certified. Please see FAR Part 33.207(c) Contractor Certification. This subparagraph states, "*The certification shall state as follows: "I certify that the claim is made in good faith; that the supporting data are accurate and complete to the best of my knowledge and belief; that the amount requested accurately reflects the contract adjustment for which the contractor believes the Government is liable; and that I am duly authorized to certify the claim on behalf of the contractor.*" However, your failure to properly certify your claim has not kept us from another review of the available documentation.

(R4, tab 2 at 2-4)

5

13. In an email dated 24 May 2016, the government's project manager notified AGCC of its appeal rights under the CDA. He described the document as "the final decision of the Contracting Officer." The letter also contained the Board's address and the time limitations for filing CDA claims. (R4, tab 2 at 6) This appeal followed.

## DECISION

The linchpin of the Board's jurisdiction over a contractor claim is the contractor's submission of a proper claim to the CO for a decision. *Air Services, Inc.*, ASBCA No. 59843, 15-1 BCA ¶ 36,146. Pursuant to the CDA, 41 U.S.C. § 7103(b), and FAR 33.207, a contractor must submit a certification to the CO for any claim exceeding $100,000.

Here, AGCC did not submit a certification to the CO as part of its "claim" dated 3 October 2015 (SOF ¶ 11). As we have held, the "absence of a certification...is not considered a 'defect.'" A "claim" exceeding $100,0000 not accompanied by any certification precludes the Board from exercising jurisdiction. *CDM International, Inc.*, ASBCA No. 52123, 99-2 BCA ¶ 30,467 at 150,514. Moreover, the fact that the CO purported to issue a final decision does not serve to remedy this problem. *W.M. Schlosser Co. v. United States*, 705 F.2d 1336 (Fed. Cir. 1983). Accordingly, the submittal is not a claim and the Board lacks jurisdiction to review the request.

## CONCLUSION

The appeal is dismissed.

Dated: 11 May 2018

*Michael T. Paul*
_____
MICHAEL T. PAUL
Administrative Judge
Armed Services Board
of Contract Appeals

(Signatures continued)

6

I concur                                      I concur

_____              _____
RICHARD SHACKLEFORD                           OWEN C. WILSON
Administrative Judge                          Administrative Judge
Acting Chairman                               Vice Chairman
Armed Services Board                          Armed Services Board
of Contract Appeals                           of Contract Appeals


I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 60648, Appeal of Areyana Group of Construction Company, rendered in conformance with the Board's Charter.

Dated:

                              _____
                              JEFFREY D. GARDIN
                              Recorder, Armed Services
                              Board of Contract Appeals

7