ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeals of -- | ) |
| | ) |
| Suodor Al-Khair Co - SAKCO for General Trading | ) ASBCA Nos. 59036, 59037 |
| | ) |
| Under Contract No. W91GY0-08-C-0025 | ) |

APPEARANCE FOR THE APPELLANT:           Mr. Ahmed S. Najm
                                        Owner

APPEARANCES FOR THE GOVERNMENT:         Raymond M. Saunders, Esq.
                                        Army Chief Trial Attorney
                                        Erica S. Beardsley, Esq.
                                        Trial Attorney

OPINION BY ADMINISTRATIVE JUDGE MELNICK ON THE GOVERNMENT'S
MOTION TO DISMISS FOR LACK OF JURISDICTION

ASBCA No. 59036 is an appeal from the contracting officer's (CO's)
29 October 2013 decision denying appellant's demand for payment for delivered air
conditioning units and an unpaid invoice. ASBCA No. 59037 is an appeal from the
same decision, which also asserted a government demand for payment for incurred
damages. The government moves to dismiss both appeals for lack of jurisdiction.

STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

1. On 1 May 2008, the Joint Contracting Command-Iraq/Afghanistan (Army or
government) awarded Contract No. W91GY0-08-C-0025 (contract) to
Suodor Al-Khair Co - SAKCO for General Trading (SAKCO or appellant) for the
design and construction of barracks and classroom buildings at the Baghdad Police
College in Baghdad, Iraq (R4, tab 1 at 1-4). Construction included, among other
things, the installation of air conditioning units in buildings (R4, tab 1 at 11). The total
contract award price was $7,860,000 (R4, tab 1 at 3).

2. The contract incorporated Federal Acquisition Regulation (FAR) clause
52.233-1, DISPUTES (JUL 2002) (R4, tab 1 at 33).

3. On 2 February 2010, CO Theresa M. Hess (CO Hess) issued a final decision
terminating the contract "for default in its entirety." Notwithstanding that the
termination was in the "entirety," the final decision stated that SAKCO remained
obligated to deliver a specific number of air conditioning units by 16 February 2010.
(R4, tab 20) The final decision was subsequently incorporated into Modification

No. P00002, dated 2 February 2010, and the unilateral modification, now stating it was a partial termination, established that the delivery of the air conditioning units would cost $263,120 under the contract (R4, tab 21).

4. On 15 February 2010, CO Hess issued another final decision terminating the contract for default in its entirety. The termination removed the requirement for delivery of the air conditioning units under Modification No. P00002 and stated that the government would no longer accept any delivered units. (R4, tab 26) The final decision was subsequently incorporated into unilateral Modification No. P00004, dated 15 February 2010 (R4, tab 25).

5. On 18 February 2010, CO Hess issued a "Notification of Demand for Payment" of $65,763.13 from SAKCO for uncorrected and incomplete contract work. The government asserted that incurred costs due to corrective repairs amounted to $151,129.87. SAKCO was liable for $65,763.13 - the difference between the cost of correcting the work and the government's withholding of previously requested payments under the contract. (R4, tab 27)

6. The record contains a document dated 2 March 2010, ostensibly signed by CO Hess, converting the 18 February 2010 demand for payment notice into a government claim for $65,763.13. The document asserted it was a "final contracting officer decision" and included the contractor's appeal rights as prescribed under FAR 33.211. There is no evidence of when or if the document was received by SAKCO. (R4, tab 29)

7. By email dated 5 April 2012, SAKCO contacted Ms. Joanne M. Guild, contract specialist for the Army Contracting Command - Reachback Division, requesting assistance in receiving payment for the air conditioning units under Modification No. P00002 (R4, tab 30). By email dated 19 April 2012, SAKCO contacted CO Joan F. Wysoske, Chief of the Army Contracting Command - Reachback Closeouts, requesting payment for the air conditioning units totaling $263,120 (R4, tab 46).

8. By email dated 1 May 2012, Ms. Guild provided SAKCO her review of the status of SAKCO's $263,120 payment request. Ms. Guild communicated that the termination of the contract under Modification No. P00004 removed the delivery requirement for the air conditioning units and SAKCO was liable to the government in the amount of $65,762.13[1] for damages. (R4, tab 54)

---

[1] Although Ms. Guild's email stated that SAKCO was liable for $65,762.13, this appears to be a typographical error and the amount is $65,763.13 consistent with the amount in the 18 February 2010 notification (SOF ¶ 5).

9. By email dated 24 September 2013, SAKCO contacted CO Wysoske requesting a status of Invoice No. 9 and its demand for payment for the air conditioning units. By email on the same date, CO Wysoske responded that the contract was terminated for default and no payments were due to SAKCO. (R4, tab 60)

10. By email dated 30 September 2013, Ms. Guild advised SAKCO that a copy of the termination (dated 2 February 2010) had previously been sent on 3 May 2012 and that $65,762.13 in damages were owed to the government (R4, tab 67). By email on the same date, SAKCO responded to Ms. Guild's email asking "why you are not going to pay us this $65,763.13," and "what about the payment for the A/C" (R4, tab 68).

11. After being unsuccessful in persuading Ms. Guild, SAKCO again contacted CO Wysoske, requesting her assistance by email dated 18 October 2013. By email on the same date, CO Wysoske replied that she would review the contract file but "[i]f there was a contracting officer's final decision in 2010, we will need significant information to decide to overturn that decision." (R4, tab 74)

12. By email dated 21 October 2013, an attached document characterized by SAKCO as a report[2] was submitted to CO Wysoske providing the basis for the payment amounts SAKCO sought (R4, tabs 75, 76). The document indicated that SAKCO sought payment for Invoice No. 9 in the amount of $72,077.33 for an alleged approved progress payment (R4, tab 76 at 1-3[3]). The document also indicated that the incurred costs for the air conditioning units were $343,460, although CO Hess valued the units at $263,120 (id.).[4] The document concluded by requesting CO Wysoske to "now evaluate the damages we have on this contract and how much we have due payment did not get pay," and was signed by Mr. Ahmed S. Najm, SAKCO's Regional Manager (id. at 8). The document did not contain a Contract Disputes Act (CDA), 41 U.S.C. §§ 7101-7109, certification.

13. By email dated 22 October 2013, CO Wysoske notified SAKCO that a decision was being written regarding its claim (R4, tab 80).

---

[2] While the document attached to the email was referred to by SAKCO as its report, by email dated 22 October 2013, SAKCO identified it as its claim to CO Wysoske (R4, tab 83).

[3] Citations to this tab are to the Bates-numbered pages.

[4] A 3 February 2010 email between SAKCO and CO Hess showed SAKCO disputing CO Hess' intent to pay $263,120 for the air conditioning units as SAKCO contended that the amount due was $343,460 (R4, tab 76 at 2-3, tab 22 at 9).

14. On 29 October 2013, CO Wysoske issued her final decision asserting that "[a]fter a review of the contract file, the Government has determined that [SAKCO] is not owed payment of any amount. The Government has further determined that [SAKCO] owes [the government] $65,763.13 (plus interest and fees) to cover the unpaid balance of the cost of repairs for damages incurred." (R4, tab 87 at 5) The decision provided a statement of facts in which CO Wysoske found that the "last e-mail correspondence between the contractor and the contracting officer located in the contract file is dated February 21, 2010." The decision does not mention a 2 March 2010 final decision. The decision included the contractor's appeal rights as prescribed in FAR 33.211. (R4, tab 87 at 4, 5)

15. On 26 November 2013, SAKCO timely appealed from the CO's 29 October 2013 decision. The Board docketed ASBCA No. 59036 for the denial of SAKCO's monetary claim, and ASBCA No. 59037 for the government's monetary claim.

16. In its 13 August 2014 order, the Board directed SAKCO to provide a copy of its certified claim that was the subject of the 29 October 2013 final decision, or otherwise show cause as to why ASBCA No. 59036 should not be dismissed for lack of jurisdiction.

17. In response to the Board's order, SAKCO submitted a copy of its claim on 2 September 2014. The claim is the same document that SAKCO submitted to CO Wysoske on 21 October 2013 (SOF ¶ 12) except it included a CDA certification and was dated 2 September 2014.

18. On 8 September 2014, the government moved to dismiss ASBCA Nos. 59036 and 59037 for lack of jurisdiction.

19. The Board's 9 September 2014 order provided SAKCO 30 days from the date of the order to submit a response to the government's motion. The Board's 14 October 2014 order provided SAKCO until 31 October 2014 to submit a response or the Board intended to decide the motion without further comment from the parties. No response was received by the Board.

DECISION

ASBCA No. 59036

A prerequisite of the Board's exercise of jurisdiction over an appeal under the CDA is the submission of a claim to the CO for a decision. 41 U.S.C. § 7103; *M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1327 (Fed. Cir. 2010). The CDA does not define the term "claim"; however, the FAR defines a claim as "a

4

written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract." FAR 2.101. When submitting a sum certain claim in excess of $100,000 to the CO, the CDA requires a contractor to certify that:

> (A) the claim is made in good faith;
> (B) the supporting data are accurate and complete to the best of the contractor's knowledge and belief;
> (C) the amount requested accurately reflects the contract adjustment for which the contractor believes the Federal Government is liable; and
> (D) the certifier is authorized to certify the claim on behalf of the contractor.

41 U.S.C. § 7103(b)(1).

In moving to dismiss this appeal for lack of jurisdiction, the government contends that SAKCO failed to submit a certified claim in a sum certain to the CO. The government argues that SAKCO's email correspondence and its 21 October 2013 claim do not state a sum certain, and if a sum certain claim was submitted, it lacked the certification required under the CDA. Moreover, the government contends that the copy of the claim submitted by SAKCO on 2 September 2014 to the Board, that included a certification, was dated after the issuance of the CO's 29 October 2013 decision and was not submitted to the CO. (Gov't mot. at 10-11)

SAKCO has the burden of establishing that the Board has jurisdiction over its appeal. *Baghdadi Swords Co.*, ASBCA No. 58539, 13 BCA ¶ 35,395 at 173,664. It is apparent that SAKCO submitted two requests to the government seeking payment – a demand in a sum certain, as a matter of right, for $72,077.33 covering the percentage of work it alleges it completed and was approved by the government under the contract; and a demand in a sum certain, as a matter of right, for $343,460 covering its incurred costs for the air conditioning units (SOF ¶ 12). The 3 February 2010 email indicated that the parties were in disagreement over the costs of the air conditioning units after Modification No. P00002 was issued, with SAKCO asserting that it was entitled to $343,460 and the government unilaterally valuing the units at $263,120 (SOF ¶ 12 n.3). *See CCIE & Co.*, ASBCA Nos. 58355, 59008, 14-1 BCA ¶ 35,700 at 174,817 (totality of the correspondence between the parties may be examined to determine whether claim meets CDA criteria). We first address whether SAKCO's 21 October 2013 submission included one unitary claim or two separate claims, and then whether certification was required for any claim. The government treats SAKCO's requests as one unitary claim. If the requests involve an examination of different operative facts, then the requests should be treated as two separate claims.

5

*See K-Con Building Systems, Inc. v. United States*, 778 F.3d 1000 (Fed. Cir. 2015); *Placeway Construction Corp. v. United States*, 920 F.2d 903, 907 (Fed. Cir. 1990) (for purposes of determining whether certification requirement is applicable, if claims arise from a common or related set of operative facts then a single claim exists). Here, the two demands will involve examination of a different set of operative facts as one demand involves facts concerning money allegedly owed for progress on the construction project previously approved by the government, and the other demand involves facts concerning alleged delivered air conditioning units under Modification No. P00002. Thus, we have two separate claims. *See CCIE*, 14-1 BCA ¶ 35,700 at 174,817-18 (two separate demands included in one invoice based on different sets of operative facts). Since SAKCO's claim for $72,077.33 to recover its progress payment does not require a certification, we retain jurisdiction over this portion of its appeal.

SAKCO's claim seeking payment for the costs of the air conditioning units exceeds $100,000 and requires a certification under the CDA. This certification is a jurisdictional prerequisite for this Board. *CCIE*, 14-1 BCA ¶ 35,700 at 174,817. The complete absence of a certification deprives the Board of jurisdiction, and the subsequent certification of the contractor's claim after an appeal has been taken is ineffective to cure the jurisdictional defect. *W.M. Schlosser Co. v. United States*, 705 F.2d 1336, 1338 (Fed. Cir. 1983). The 21 October 2013 submission lacks a certification, and nothing in the record shows a certification accompanied SAKCO's demand before this appeal was initiated. At the direction of the Board, SAKCO submitted a copy of its claim for this appeal which contains a certification, but the certification is dated 2 September 2014, well after the filing of this appeal (SOF ¶ 17). SAKCO's attempt to correct the defect with a retroactive certification after initiation of this appeal has no legal bearing on the Board's jurisdiction of this appeal. *IMS P.C. Environmental Engineering*, ASBCA No. 53158, 01-2 BCA ¶ 31,422; *CDM International, Inc.*, ASBCA No. 52123, 99-2 BCA ¶ 30,467. The retroactive certification is ineffective to cure the original jurisdictional defect. *Schlosser*, 705 F.2d at 1338. If a contractor fails to submit a proper CDA claim to the CO, any purported CO's decision on the matter is a nullity. *Id.* Therefore, we lack jurisdiction to adjudicate the portion of SAKCO's appeal concerning the air conditioning units.

ASBCA No. 59037

Under the CDA, a CO's decision "on a claim is final and conclusive and is not subject to review by any forum, tribunal, or Federal Government agency, unless an appeal or action is timely commenced." 41 U.S.C. § 7103(g). A contractor may appeal a CO's final decision within 90 days from the contractor's receipt date of the decision to an agency board, or alternatively, initiate an action within 12 months from receipt date of the decision in the U.S. Court of Federal Claims. 41 U.S.C. § 7104. The 90-day appeal period for filing an appeal to this Board is statutory and may not be

6

waived or extended. *See Cosmic Construction Co. v. United States*, 697 F.2d 1389, 1390 (Fed. Cir. 1982). Therefore, a prerequisite for this Board to exercise jurisdiction over a contractor's appeal is the timely filing of an appeal. *Mansoor International Development Services*, ASBCA No. 58423, 14-1 BCA ¶ 35,742 at 174,926-27.

SAKCO timely appealed from CO Wysoske's 29 October 2013 final decision asserting a government claim for $65,763.13 (SOF ¶ 15). However, the government makes two arguments to dismiss this appeal for lack of jurisdiction contending that SAKCO's notice of appeal was untimely. First, the government argues that SAKCO cannot prove that the Board has jurisdiction over its appeal, citing *CANVS Corp.*, ASBCA No. 56347, 08-2 BCA ¶ 33,892 for support. In particular, the government contends that a 2 March 2010 final decision asserted the same government claim for $65,763.13, and SAKCO's appeal is filed more than three years after that decision and the termination of the contract. (Gov't mot. at 7) Second, the government argues that the 29 October 2013 decision did not vitiate the finality of the 2 March 2010 decision as CO Wysoske was not reconsidering the earlier decision and was merely addressing SAKCO's repeated requests and failure to heed previously communicated instructions (*id.* at 8-10).

Here, it is undisputed that SAKCO timely appealed from the CO's 29 October 2013 final decision to this Board. However, the government's position is that SAKCO lacks the right to appeal this decision because SAKCO failed to appeal, within the CDA's statutorily prescribed periods, an earlier purported 2 March 2010 final decision that asserted the same claim and was based on the same operative facts as the 29 October 2013 decision. By arguing that this instant appeal is filed more than three years after the alleged 2 March 2010 decision date, the government argues that the 2 March 2010 decision is final and conclusive, and that the 29 October 2013 decision is ineffective as an assertion of a government claim.

The CDA requires a CO to "mail or otherwise furnish a copy of the decision to the contractor." 41 U.S.C. § 7103(d). FAR 33.211(b) further provides that the CO furnish a copy "by certified mail, return receipt requested, or by any other method that provides evidence of receipt." Whether the 2 March 2010 document became a final and conclusive decision requires the determination of its effective receipt date by the contractor. The government bears the burden to establish the contractor's receipt date. *Singleton Enterprises*, ASBCA No. 58235, 14-1 BCA ¶ 35,554 at 174,227; *David Grimaldi Co.*, ASBCA No. 49795, 97-2 BCA ¶ 29,201 at 145,296; *Tyrone Shanks*, ASBCA No. 54538, 05-2 BCA ¶ 33,069 at 163,892. The government's reliance on *CANVS* is misplaced because *CANVS* involved a party having the burden to prove that it was a contractor under the CDA to establish the Board's jurisdiction over its appeal, which is not an issue in this instant appeal.

7

The government has not met its burden. Nothing in the record shows SAKCO ever received a 2 March 2010 decision. Nor has the government alleged that SAKCO did receive a copy. Further, CO Wysoske's 29 October 2013 final decision failed to mention or reference any 2 March 2010 decision (SOF ¶ 14). Accordingly, we cannot conclude that a 2 March 2010 final decision was ever sent, much less became final and conclusive. Since SAKCO has timely appealed from CO Wysoske's 29 October 2013 final decision, we have jurisdiction to adjudicate ASBCA No. 59037.

## CONCLUSION

The government's motion is granted in part in ASBCA No. 59036. We have jurisdiction over the portion of SAKCO's appeal with regard to its demand for progress payment for $72,077.33. Since SAKCO's demand for payment for the air conditioning units is over $100,000 and lacked a CDA certification before this appeal was initiated, we dismiss that portion of the appeal for lack of jurisdiction.

The government's motion is denied in ASBCA No. 59037.

Dated: 14 April 2015

MARK A. MELNICK
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 59036, 59037, Appeals of Suodor Al-Khair Co - SAKCO for General Trading, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals